Filed 11/14/22  In re Samuel A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re SAMUEL A., a Person Coming Under the Juvenile Court Law. | B316997, B317751<br><br>(Los Angeles County Super. Ct. No. 19CCJP00325A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PATRICIA A.,<br><br>    Defendant and Appellant. | |

| | |
|---|---|
| PATRICIA A., | B318877 |
| Petitioner, | (Los Angeles County Super. Ct. No. 19CCJP00325A) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., | |
| Real Parties in Interest. | |

APPEALS from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge. Dismissed.

ORIGINAL PROCEEDINGS; writ petition to review order setting hearing under Welfare and Institutions Code section 366.26, Philip L. Soto, Judge. Petition denied.

Liana Serobian, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.

No appearance by Respondent Los Angeles County Superior Court.

Amir Pichvai for Plaintiff, Respondent and Real Party in Interest the Los Angeles County Department of Children and Family Services.

Marissa Coffey, under appointment by the Court of Appeal, for Real Party in Interest Samuel A.

—————————

Patricia A., the mother of now-six-year-old Samuel A., appeals from December 17, 2021 and January 19, 2022 orders denying multiple petitions filed by Patricia for modification of court orders. (Welf. & Inst. Code, § 388.)[1] Because subsequent events preclude us from providing Patricia any effective relief, we dismiss these appeals as moot.

In a separate original proceeding Patricia seeks extraordinary writ relief (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452) from the juvenile court's February 23, 2022 order after a combined statutory review hearing (§§ 366.21, subds. (e)(1), (f)(1), 366.22, subd. (a)(1)) terminating family reunification services and setting a hearing pursuant to section 366.26 to consider a permanent plan of adoption for Samuel. Patricia contends the court erred in terminating family reunification services and in concluding further visitation with Samuel would be detrimental to him. The petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Initial and Amended Dependency Petitions, Jurisdiction Hearing and Disposition Order*

On March 20, 2019 the juvenile court sustained the first amended petition filed by the Los Angeles County Department of Children and Family Services pursuant to section 300, subdivision (b)(1), finding Patricia's unresolved history of alcohol abuse left her unable to care for Samuel; Patricia suffered from untreated mental health issues, including anxiety and depression; Patricia self-medicated with alcohol to alleviate her suffering; and her alcohol abuse and untreated mental health

---

[1] Statutory references are to this code unless otherwise stated.

3

issues placed Samuel at substantial risk of serious physical harm.

The court declared Samuel a dependent child of the court and removed him from Patricia's custody, finding by clear and convincing evidence there would be substantial danger to Samuel's physical health and safety if he were returned to Patricia.  The court placed Samuel in the care and custody of the Department and ordered family reunification services for Patricia, including monitored visitation for a minimum of six hours per week, participation in a drug and alcohol program with random weekly testing, and individual counseling, including a psychiatric evaluation, to address alcohol addiction, anxiety and depression.[2]

2. *The Statutory Review Hearings and Reversals on Appeal*

The extensive post-disposition proceedings, including Patricia's section 388 petition to set aside the jurisdiction findings pursuant to section 390 following a favorable Evidence Code section 730 evaluation and her refusal to work with, and active harassment of, the multitude of attorneys appointed to represent her, as well as the juvenile court's improper attempt to address Patricia's behavior by appointing a guardian ad litem for her, are detailed in our prior decisions in *In re Samuel A.* (2020) 55 Cal.App.5th 1 (*Samuel II*) (reversing the juvenile court's order summarily denying Patricia's section 388/390 petition as an unauthorized motion for new trial) and *In re Samuel A.* (2021)

---

[2]     We affirmed the court's jurisdiction finding as to Patricia's alcohol abuse and disposition order.  (*In re Samuel A.* (Dec. 16, 2019, B296535) [nonpub. opn.] (*Samuel I*).)  We did not reach the court's additional jurisdiction finding of emotional instability. (*Ibid.*)

69 Cal.App.5th 67 (*Samuel III*) (reversing court order appointing guardian ad litem).

Our decision in *In re Samuel III, supra,* 69 Cal.App.5th 67, filed September 21, 2021, directed the juvenile court to vacate all orders made at hearings where Patricia, under the appointment of a guardian ad litem, was denied the right to communicate directly with her counsel, including the orders made at the combined section 366.21, subdivisions (e) and (f), hearing and the May 7, 2021 order pursuant to section 366.26 terminating parental rights.

We afforded the Department the opportunity to show cause why *Samuel III* did not require summary reversal of Patricia's pending appeals from the juvenile court's November 4, 2020 and December 17, 2020 orders denying multiple section 388 petitions seeking to set aside the guardian ad litem order and appointment of new counsel; the April 8, 2021 order denying without a hearing Patricia's section 388 petition to modify the order terminating her reunification services; and its May 7, 2021 order terminating her parental rights. Receiving no response from the Department, we reversed each of those orders. (See *In re Samuel A.* (Dec. 6, 2021, B312480) [nonpub. opn.]; *In re Samuel A.* (Dec. 6, 2021, B310032 [nonpub. opn.].)

3. *Proceedings on Remand Leading to the Most Recent Statutory Review Hearing Terminating Reunification Services*

On October 27, 2021, before issuance of our remittitur in *Samuel III, supra,* 69 Cal.App.5th 67, Patricia filed in propria persona a section 388 petition seeking immediate visitation with Samuel, citing our disposition in *Samuel III* as the basis for her request. On November 5, 2021 the matter was transferred to a

new bench officer who scheduled a hearing on Patricia's petition on November 29, 2021.

Our remittitur in *Samuel III* issued on November 24, 2021. In its November 24, 2021 written response to Patricia's October 27, 2021 section 388 petition, the Department urged the court to deny any visitation, asserting Samuel was the most stable he had ever been in the six months since Patricia's rights were terminated and visitation had ceased. The Department argued it would not be in Samuel's best interests to reinstate visits with Patricia. The Department requested the court consider the issue of visitation at the new statutory review hearing (§§ 366.21, subds. (e), (f), 366.22). Alternatively, if the court were inclined to order visitation immediately, the Department requested the visits be three hours once a week at the Department's office with a security guard present.

Samuel's counsel also opposed Patricia's section 388 petition as contrary to Samuel's best interests and, like the Department, requested the court consider the matter of visitation at the statutory review hearing.

On November 29, 2021 the juvenile court, citing our remittitur in *Samuel III*, vacated its April 20, 2020 order appointing a guardian ad litem for Patricia and continued the hearing on Patricia's October 27, 2021 petition to December 10, 2021.[3] The court ordered the Department to provide information

---

[3] Although Patricia had filed her October 27, 2021 section 388 petition in propria persona, the court stated it would consider it rather than ordering counsel to refile it, but reminded Patricia she is represented by counsel, advised her it would only consider pleadings filed by her counsel, and ordered her to stop filing in propria persona any more documents in the court.

by December 8, 2021 whether visits in a therapeutic setting were feasible.

On December 8, 2021 the Department provided a last minute information advising the court Samuel's therapist had told the Department in a voicemail, without further elaboration, she would not be able to provide the information the court was requesting. The Department's further attempts to contact the therapist went unanswered. The Department once again urged the court to postpone any ruling on visitation to the statutory review hearing. It also asked the court to deny Patricia's petition as not being in Samuel's best interest.

a. *The December 17, 2021 hearing on Patricia's October 27, 2021 Section 388 Petition*

At the hearing on Patricia's October 27, 2021 section 388 petition, which was continued to December 17, 2021, Patricia's counsel argued our remittitur in *Samuel III* had "rewound the statutory clock back to the [original] .21(e) hearing date of September 2019." Because Patricia was now within the statutory reunification period, she argued, the court and the Department had a duty to assist Patricia with, and provide, visitation. Patricia's counsel urged the court not to wait to the statutory review hearing but to order visitation immediately, "beginning today."

The court disagreed "the clock, the reunification clock, is unwound on account of the court's decision about the [guardian ad litem]." According to the juvenile court, our decision did not mean we "go back in time to the .21(e). We are moving forward in time. And we will be setting a [statutory review] hearing in January or February, whichever is appropriate, for a full hearing on whether or not there's still a substantial risk to the child if the

7

child were returned to mother if there's some reason why additional services should be provided to try and reunify the child with the mother. That does not mean that we roll back time and give her another 18 months to try and reunify."

The court agreed with the Department and Samuel there was no evidence of "changed circumstances" (other than our opinion in *Samuel III*) and it was not in Samuel's best interests "to reinitiate on a regular basis visits or services for the mother to try and reunify." The court denied Patricia's October 27, 2021 section 388 petition.[4]

Notwithstanding the denial of Patricia's section 388 petition seeking visitation, the court ruled it would, over the objections of the Department and Samuel, order one monitored visit between Samuel and Patricia for two hours at the Department with a security guard present. The court explained, "I'm doing this because I want to see whether or not she will learn to regulate her behavior so that I know . . . whether or not this child actually can be safe with this mother. I don't know if that's possible, but I think I at least owe her the opportunity for her to show me that it is." The court told the parties it would receive reports from the caretakers and the Department as to how Samuel reacted to the visit and would be making any further rulings on visitation at the combined sections 366.21, subdivisions (e), (f) and 366.22 hearing, which it set for February 17, 2022. That visit took place on December 22, 2021.

---

[4] Before the court could finish its ruling, Patricia interrupted the hearing, which was held remotely, and, after several warnings, was excluded from the hearing.

b. *The January 19, 2022 hearing on several section 388 petitions filed prior to our decision in Samuel III*

On January 19, 2022 the court held a hearing on the three section 388 petitions Patricia had filed on November 3, 2020, November 25, 2020, and March 11, 2021, which we had summarily reversed on appeal in December 2021 based on our decision in *Samuel III*. All the petitions sought modification of orders since reversed or vacated (with the exception of Patricia's request for new appointed counsel, which the court denied the same day at a *Marsden* hearing). Rather than simply deny them as moot, however, the court considered them as if they were new section 388 petitions again seeking immediate and regular visitation and, like the Department and Samuel, focused on Patricia's December 22, 2021 visit with Samuel.

In its lengthy January 10, 2022 written response for the January 19, 2022 hearing the Department detailed the history of Patricia's case and added information concerning the events that had occurred after the termination of parental rights in May 2021. Among other things, the Department reported Patricia had called police in May, June and November 2021 complaining Samuel's foster parents were abusing him, a complaint Patricia had made about every foster parent with whom Samuel had been placed, causing two families to request Samuel be moved and, according to the Department, contributing to Samuel's diagnosed post-traumatic stress disorder. The welfare checks conducted never found evidence of abuse.

The night before Samuel's scheduled December 22, 2021 visit, Samuel asked his foster parents if he could conduct the visit by telephone. After he was told he was going to see Patricia in person, Samuel went to bed. He became distraught and had

difficulty calming down. The foster parents said he had not exhibited that behavior since his visits with Patricia had been terminated six months earlier.

"Overall," the Department reported, "the visit went well." Samuel referred to Patricia as "other Mama," and he and Patricia interacted well. Samuel told Patricia the judge had said they were just going to do this "one time" visit together and no more. Patricia responded that was not true and was told by the social worker not to discuss the case. Patricia said, "Well, he's the one bringing it up." Near the end of the visit Samuel told Patricia, "I'm going to miss you a lot when I'm back home." Patricia responded, "I'm going to miss you a lot too." A few minutes before the visit ended, the social worker saw Patricia with her telephone and heard multiple clicks from the mobile phone, indicating Patricia was taking photographs of Samuel. The social worker asked her to stop photographing Samuel; Patricia denied she was taking photographs and insisted, in any event, she had the right to do it. Samuel hugged Patricia goodbye. He "did not cry or appear to be sad." At the end of the visit, Patricia refused to comply with a court order requiring she remain for 15 minutes after Samuel left. She screamed at the social worker and the security guard and told them she intended to report them both to the FBI. Then she left.

After the visit the foster parents reported Samuel had "displayed some emotional dysregulation." He asked his foster mother to go with him to any other visits with Patricia and did not like going without her there. At bedtime Samuel screamed and cried and became inconsolable. It took 45 minutes for him to calm down. The next night, he developed a rash over his upper body that was identical to those he used to get when he was first

placed with them and was suffering from post-traumatic stress disorder. Since the December 2021 visit, the Department reported, Samuel had not expressed any interest in visiting with Patricia.

The Department and Samuel's counsel urged the court to deny any further visitation pending the statutory review hearing as not in Samuel's best interests.

Patricia, still represented by counsel, submitted in propria persona a last-minute "walk-on" request challenging the Department's "false reports" and accusing the Department of railroading and gaslighting her. She told the court she "fears for her son's life."

Patricia's counsel argued all the Department's evidence was immaterial to the issue of visitation. There was no risk of harm to Samuel in Patricia's presence and, even if there were, any risk could be ameliorated with an order of monitored visitation. Given the absence of any danger to Samuel, Patricia's counsel argued, visitation must be ordered.

Treating the three pending petitions separately, the court denied the earliest one, emphasizing Samuel's adverse response to his last visit with Patricia. "He's having a very negative reaction to these visits. And it's not something that demonstrates to this court that the child would be benefitted by further visits with the mother or other services to the mother. For those reasons, the 388 will be denied."

Before ruling on the remaining two petitions the court permitted Patricia to testify. Patricia described herself as a "great mama" and insisted it was in Samuel's best interests to be with her. Patricia testified Samuel had told her during the last visit that he loved and missed her and did not believe the things

11

others were saying to him about Patricia. Patricia denied ever yelling at social workers, making negative comments to Samuel about how he was dressed or shoving a table in anger during a visit. She also denied taking photographs of Samuel at the last visit or yelling at the security guard.

The court denied the remaining section 388 petitions, again stating renewed visitation was not in Samuel's best interests. The court found Patricia's denials of misconduct and abusive behavior not to be credible and commented, as it had previously, that Patricia resisted the efforts of the social workers, monitors and lawyers who were part of the process. As for the December visit, the court found, although there were some good aspects, "there was still much of the same conduct that we had before with mother saying things that she wasn't supposed to say to the child, speaking about the court case, being abusive to the social workers, security guards and other personnel. This is all part and parcel of mother not understanding and demonstrating the things that we had hoped she'd learn in these classes that she says she completed. . . . I wanted to give mom a visit and the child a visit to see how everybody would react and see whether or not that was a good signpost, if you will, to whether we can resume more frequent visits that would be beneficial for the child as well as the parent. It's very clear to this court that's not the case. I'm sorry to say."

The court ordered Patricia, over her counsel's objection, to submit to weekly on demand alcohol and drug tests prior to the statutory review hearing and reminded her a missed test is considered a dirty test.

Patricia's counsel again requested immediate visitation pending the statutory review hearing. The court denied the request.

4. *The Statutory Review Hearing and Order Terminating Family Reunification Services and Setting the Selection and Implementation Hearing*

In the Department's report for the combined section 366.21, subdivisions (e) and (f), and section 366.22 hearing and in a trial brief prepared specially for the hearing, the Department recommended the court terminate family reunification services and set the matter for a selection and implementation hearing. Samuel's counsel also filed a trial brief similarly requesting the termination of family reunification services and an order setting the selection and implementation hearing.

Both the Department and Samuel's counsel argued that Patricia had received nearly 24 months of family reunification services, from at least the March 2019 jurisdiction hearing up until reunification services were originally terminated in May 2021. Although Patricia maintained she had completed parenting classes and individual counseling early in the case, they argued, it was clear she had not learned anything. If anything, her impulse control issues were worse than ever, and she lacked all insight into how her temper tantrums, some violent and in Samuel's presence, affected Samuel.

a. *The Department's last minute information*

In a last minute information for the court filed February 16, 2022, the Department reported: Patricia did not show up for alcohol and drug testing on February 1, 2022 and February 7, 2022 as scheduled. On February 10, 2022 Patricia called the California Highway Patrol reporting the social worker transporting Samuel to visits had been physically and

13

emotionally abusing him. She stated Samuel had a red stripe on his face and on his torso when she last saw him and did not believe those marks were seat belt related, as the officer had suggested. She told the officer she had "won all her appeals" and the dependency case was a fraud. She asked the officer to investigate the social worker for abuse, but the officer explained Patricia lacked personal knowledge of abuse. Patricia told the officer she would be reporting him to the FBI, among other authorities. The officer terminated the exchange.

On February 10, 2022 Patricia also called the local police department's child protective hotline to insist the police conduct a welfare check on Samuel at the foster parents' home. The police officers visited the foster parents' home, spoke with Samuel and reported no concerns.

On February 14, 2022 a member of the Santa Monica Police Department's Mental Evaluation Team (MET) called the Department to report Patricia had called the 911 emergency number on February 8, 2022 . The MET officer stated she could not provide details of Patricia's health condition pursuant to the Health Insurance Portability and Accountability Act (HIPAA) without Patricia's consent, but was concerned: Patricia had suggested she had a child, and the MET officer was fearful of a child being in Patricia's care at that time. The Department related that Samuel was not in Patricia's custody.

On February 8, 2022 the fire department went to Patricia's home after she had called the 911 emergency number. Due to Patricia presenting with depressive symptoms, she was placed on a psychiatric hold for 24 hours.

On February 16, 2022 the Department received a call from a Santa Monica Fire Department paramedic, "Mr. M.," who said

14

that in the last two months he had had been called to Patricia's residence three or four times. He reported it was abundantly clear Patricia was not taking care of her health or well-being and required immediate mental health assistance.

   b. *The continuance of the statutory review hearing and Patricia's walk-on request filed in propria persona*

  The court continued the statutory review hearing to February 22, 2022 after Patricia's counsel filed another motion to withdraw and Patricia filed, in propria persona, a motion to disqualify Judge Soto.

  On February 22, 2022 the court denied the motion by Patricia's counsel to withdraw, struck the disqualification motion, and proceeded to the statutory review hearing.

  The same day Patricia filed in propria persona a walk-on request. She told the court not to believe Samuel's foster parents, noting they had made clear their intent to adopt Samuel and had posted on social media (after Patricia's parental rights were initially terminated in May 2021) that they intended to be Samuel's "forever family." As to her no-shows for alcohol testing, Patricia claimed the Department had sent the testing referral to an email address she does not routinely check; the email went to her spam folder; and, when she finally saw the email on February 9, 2022, she replied immediately and told the Department she would gladly resume testing. Patricia acknowledged going to the hospital—on February 10, 2022, not on February 8, 2022—but for injuries she sustained in a bicycle accident, which resulted in a concussion. She said she was not placed on a psychiatric hold. According to Patricia, due process demanded that she be provided with a new attorney, new social

workers, and a new juvenile court judge who would not be biased against her.

c. *The parties' arguments at the hearing*

At the hearing (after her motion to withdraw was denied) Patricia's counsel requested six more months of services for Patricia. Counsel told the court Patricia was willing and able to comply with whatever additional orders the court deemed appropriate. Asserting Patricia had a stable home and income, counsel contended there was a substantial likelihood that Samuel could be returned to Patricia's home within the next six months. Counsel specifically requested weekly monitored in-person visits.

The Department urged the court to terminate reunification services and set a selection and implementation hearing. According to the Department Patricia's compliance with her case plan had been "woefully inadequate." Although Patricia had received a positive mental health evaluation from her therapist in 2019, the same therapist had diagnosed Samuel with a life-threatening parasitic illness, even though the therapist had never seen Samuel. The Department asserted that the therapist's unprofessional diagnosis undermined the therapist's expertise and credibility. In addition, although Patricia had attended parenting classes early in the case, she did so without notifying the Department and without the instructor having knowledge about the Department's concerns. The instructor later told the Department she wished she would have been informed so she could have provided more help to Patricia.

Patricia attended Alcoholic Anonymous meetings but continued to deny she had any problem with alcohol even though she had shown up to court in 2019 with alcohol on her breath. More recently, in February 2022 she exhibited the same

16

concerning behaviors that had led to the initiation of dependency proceedings: Stomach pain complaints accompanied by alcohol intoxication and emotional instability, leading to a 24-hour psychiatric hold. Patricia did not show up for drug and alcohol testing on February 1, 2022 and February 7, 2022. Although Patricia displayed a "willingness" to test at her convenience, that was not sufficient to protect Samuel, as the court had repeatedly explained to her throughout these dependency proceedings.

Samuel's counsel similarly argued against extending the reunification period. In addition to matters argued by the Department, Samuel's counsel stated Patricia had no impulse control and posed a threat to Samuel's safety.

Both the Department and the Samuel's counsel argued that there was no likelihood Patricia could reunify with Samuel and that Patricia, even if she had completed her case plan, lacked insight into her own addiction and behavior and the effect of both on Samuel. They also argued visitation was not only not in Samuel's best interests, as the court had earlier decided, but it was also, in fact, detrimental to him, as the December 2021 visit had confirmed.

d. *The court's ruling*

The court found by a preponderance of the evidence that return of Samuel to Patricia's custody would create a substantial risk of detriment to his safety, protection and physical and emotional well-being. The court found by clear and convincing evidence that Patricia, even if she had technically completed her case plan, had failed to make substantial progress in the court-ordered treatment plan over the nearly three years the case had been in dependency proceedings, and it was not reasonable to conclude Samuel could be returned safely to Patricia's custody if

another six-months of reunification services were ordered. Based on Samuel's strong physical and emotional reaction both just before and immediately following the December 2021 visit, the court found further visitation with Patricia would be detrimental to Samuel and denied Patricia visitation in the post-reunification period.

> e. *Patricia's statement in court*

After the court finished stating its ruling, the court granted Patricia's request to speak on her own behalf. Patricia repeated the explanations for her no-show at the alcohol tests that she had made in her walk-on papers. As for insight into her alcohol abuse, Patricia stated she is a sponsor at Alcoholics Anonymous, a member of Al-Anon and regularly attends meetings for both. She had tested negative for alcohol for nearly two years during these dependency proceedings. She insisted she had done everything the court had asked her to do in order to bring her son home.

Patricia acknowledged being hospitalized in February 2020 but again claimed it was due to a concussion following a bicycle accident, an injury that might have looked like a mental health episode to an outsider—she was very dizzy—but was not. She stated she had been taken to an "inappropriate" hospital location and later moved to a proper treatment facility for her head injury.

Patricia also asserted she had not been well-served by her current attorney Niti Gupta, the same attorney who had requested the appointment of a guardian ad litem against Patricia's wishes. Patricia had been trying since before the guardian ad litem was appointed to have Gupta removed from

her case. Gupta had also asked the court several times to be relieved.

Patricia claimed social workers had lied, Gupta had lied or withheld information from her, Samuel's lawyer had lied, and Samuel's foster parents had lied. She had reported all of them to the appropriate authorities. But, in the meantime, the court should not believe the social workers, law enforcement officers or the unnamed paramedic whose recent reports the court cited in its ruling.

Finally, Patricia stated the Department and the court were correct that Samuel had been emotionally and physically traumatized. But that trauma resulted from Samuel's enormous separation anxiety after being removed from Patricia and then precluded for most of the proceedings from having meaningful visits with her.

The court thanked Patricia for her input and advised her of her right to file a writ petition challenging its decision.

## DISCUSSION

1. *Patricia's Appeals from the Orders Denying Her Section 388 Petitions Are Now Moot*

Patricia has appealed from the court's December 17, 2021 order (denying after hearing her October 27, 2021 section 388 petition seeking to vacate the court's May 7, 2021 order terminating her parental rights) and January 19, 2022 order (denying after hearing multiple section 388 petitions originally filed on November 3, 2020, November 25, 2020 and March 11, 2021, requesting removal of the guardian ad litem, appointment of new counsel and liberalized visitation). The January 19, 2022 order also denied without a hearing Patricia's January 3, 2022 section 388 petition, filed in propria persona, seeking to modify

19

the court's December 17, 2021 order granting Patricia a single visit in December 2021. Patricia sought in that petition to increase visitation to three hours per week.

All of these orders have been mooted by subsequent events: *Samuel III* reversed the order appointing a guardian ad litem and directed the court to vacate orders made at all statutory review hearings, including the order terminating her parental rights. The court found at the February 2022 statutory review hearing that any additional visitation with Patricia would be detrimental to Samuel. And, in July 2022, while these appeals were pending, the juvenile court granted the motion of Patricia's counsel, Niti Gupta, to be relieved and appointed new counsel for Patricia.[5] In light of our denial of Patricia's rule 8.452 petition for extraordinary writ relief, effectively affirming the juvenile court's finding that further visitation would be detrimental to Samuel, reversal of these orders denying Patricia's various section 388 petitions would not afford Patricia effective relief. (See *In re N.S.* (2016) 245 Cal.App.4th 53, 58-59 ["[a]n appellate court will dismiss an appeal when an event occurs that renders it impossible for the court to grant effective relief"]; *In re E.T.* (2013) 217 Cal.App.4th 426, 436.)[6]

---

[5] We granted Patricia's request for judicial notice of the court's July 28, 2022 minute order granting Gupta's motion to withdraw as counsel.

[6] As discussed at oral argument, it may have more appropriately been the Department's burden following our reversals to move in the juvenile court to restrict Patricia's visitation with Samuel, not Patricia's to request visitation. Nevertheless, given the court's order allowing one visit and its

20

## 2. *The Court Did Not Err in Summarily Denying Patricia's January 3, 2022 Petition Filed in Propria Persona*

Patricia's appeal from the court's January 19, 2022 order denying her January 3, 2022 section 388 petition filed in propria persona fails for an additional reason. There was nothing improper about the court's order prohibiting Patricia, while represented by counsel, from directly filing documents with the court. Whether that petition should have been summarily denied or precluded from being filed at all is immaterial. The court did not err in refusing to consider it.

## 3. *The Court Did Not Err in Terminating Patricia's Reunification Services at the Statutory Review Hearing*

### a. *Governing law*

When the court removes a dependent child from parental custody, absent a specific statutory exception, it is required to order the child protective services agency (here the Department) to provide the parent with services to facilitate the reunification of the family. (§ 361.5, subd. (a); see *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843; *In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [reunification services are among the "[s]ignificant safeguards" that are built into the dependency statutory scheme]; *In re M.F.* (2019) 32 Cal.App.5th 1, 13 ["[f]amily reunification services play a critical role in dependency proceedings"].)

For a child under three years old on the date of initial removal, as Samuel was, this period of reunification is presumptively limited to six months. (§ 361.5, subd. (a)(1)(B);

---

subsequent finding further visitation by Patricia would be detrimental to Samuel, any procedural error in this regard was harmless.

*Tonya M., supra,* 42 Cal.4th at p. 843.) The period may be extended at both the six- and 12-month review hearing only upon findings made at those hearings that continuation of services was likely to facilitate reunification. (§ 366.21, subds. (e), (f); *Tonya M.,* at p. 844.)

The Legislature has determined (with a limited exception not relevant here) the maximum period for services is 18 months. (§§ 361.5, subd. (a)(3), 366.22, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) At the 18-month permanency review hearing the juvenile court must order a child returned to a parent's custody unless it finds, by a preponderance of the evidence, that return of the child will create a substantial risk of detriment to the child's safety, protection or physical or emotional well-being. (§ 366.22, subd. (a).)

If the child is not returned to a parent at the 18-month review hearing or at least placed in the parent's custody with services (see *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 311-312), the court must terminate reunification services and order a hearing pursuant to section 366.26 after finding, by clear and convincing evidence, that reasonable services have been offered or provided to the parent or guardian. (§ 366.22, subd. (a)(3).)[7]

---

[7] In *Michael G. v. Superior Court* (2021) 69 Cal.App.5th 1133, the court of appeal held that reunification services must be terminated at the 18-month review hearing (barring applicability of a limited exception of section 366.22, subdivision (b)), even if the juvenile court determines reasonable services were not provided during the most recent review period. The court reasoned the statutory language did not condition the setting of the section 366.26 hearing on the reasonable services finding.

The Department must offer or provide services designed to eliminate the conditions that led to the juvenile court's jurisdiction finding. (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1240; *Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 420; see Cal. Rules of Court, rule 5.502(33) ["'reasonable services' means those efforts made or services offered or provided by the county welfare agency or probation department to prevent or eliminate the need for removing the child, or to resolve the issues that led to the child's removal in order for the child to be returned home, or to finalize the permanent placement of the child"].) In assessing whether reasonable services have been provided, the standard is not whether the services "'were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re J.E.* (2016) 3 Cal.App.5th 557, 566; accord, *In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

We review the court's finding that reasonable services were offered or provided for substantial evidence. (See *In re M.F., supra*, 32 Cal.App.5th at p. 14 ["we review a reasonable services finding "'in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard,'"" italics omitted]; *T.J. v. Superior Court, supra*, 21 Cal.App.5th at p. 1238 [same]; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012 [addressing appellate review of order requiring a finding by clear

---

(*Michael G.,* at p. 1143.) On January 19, 2022 the Supreme Court granted review, S271809.

and convincing evidence].)  We do not substitute our judgment for the juvenile court or reweigh the evidence.  (*In re M.F.,* at p. 15.)

> b. *Patricia has not demonstrated any error in failing to revise her case plan following our remand in* Samuel III

In challenging the court's reasonable services finding, Patricia contends the court failed to craft a new case plan following our remand in *Samuel III* that was specifically tailored to Patricia's needs as they had evolved.  For example, she observes, the court did not order any additional mental health treatment or alcohol programs other than random drug and alcohol testing.

Not only did Patricia fail to make this argument in the juvenile court (she asked the court simply to order "whatever services" it found appropriate to afford Patricia six more months of reunification), but also she cites no authority for the proposition that a revised case plan was required, particularly here, where Patricia refused to cooperate or provide any information when the Department specifically asked Patricia for an update on her progress following our remand.  In response to the Department's inquiry, Patricia told the social worker she had completed all of her court-ordered case plan; she had no unresolved mental health or alcohol issues; the social workers were the ones with mental health issues; and she was reporting them to law enforcement.

Moreover, the court explained its order terminating reunification services had little to do with Patricia's case plan. The court accepted that Patricia may have completed her court-ordered programs, but emphasized her lack of insight and apparent inability to learn anything from them.  Patricia did not believe she had a problem, and no amount of services it seemed

24

would benefit her or facilitate reunification.[8]  Patricia has cited
no evidence and no authority to support her claim the court erred
"as a matter of law" in failing to revise her case plan with
additional services after our remand.

>    c. *Substantial evidence supports the court's limited*
>        *visitation order after our remand*

Patricia also contends she received inadequate services
following our remand in *Samuel III* because she was only allowed
a single visit with Samuel.  As Patricia's counsel argued below,
the effect of our opinion in *Samuel III*, while not negating the
time or services Patricia had already received (and thus not
arguing for an additional 18 months of reunification as the court
had suggested), effectively returned Patricia to the reunification
phase where, absent a finding that visitation would jeopardize
Samuel's physical safety (§ 362.1, subd. (a)(1)(B)), she was
statutorily entitled to some visitation.  (See *Serena M. v. Superior
Court* (2020) 52 Cal.App.5th 659, 673 [visitation is "'a critical
component, probably the most critical component, of a

---

[8]  In rejecting Patricia's request for "whatever services" the
court found appropriate, the court explained providing Patricia
with additional services would not facilitate reunification:  "The
Department and everyone else involved in this case has bent over
backwards to try and accommodate the mother and provide her
with all services needed to reunify with her child despite the fact
that mother has been extremely argumentative, rude,
threatening, menacing to social workers, to professional
monitors, to foster parents, to the MAT [Multidisciplinary
Assessment Team] evaluator, to virtually everyone who was
responsible for providing services for her which she perceived,
apparently, as a threat instead of as somebody trying to help her
with this problem."

reunification plan'"]; *In re T.W.-1* (2017) 9 Cal.App.5th 339, 347 [same].)  The visitation ordered during the reunification period "shall be as frequent as possible, consistent with the well-being of the child."  (§ 362.1, subd. (a)(1)(A).)

Patricia correctly observes the court did not make a finding at the December 2021 hearing that visitation would jeopardize Samuel's safety.  However, neither did the court deny her visitation.  To the contrary, on November 29, 2021, the first hearing following issuance of our remittitur, the juvenile court ordered the Department to contact Samuel's therapist concerning the feasibility of immediate visitation in a therapeutic setting. When that information proved unavailable, the court ordered a monitored visit between Samuel and Patricia to assess whether renewed visitation after a period of no visitation would be, as the Department and Samuel argued, harmful to Samuel.  The court did exactly what it was supposed to do:  It ordered visitation, while limiting the frequency pending the next hearing, to address the concerns Samuel's counsel had expressed about Samuel's well-being.

In January 2022, after receiving conflicting reports as to whether the December visit had proved detrimental to Samuel, the court advised the parties it would address Patricia's request for more visitation at the upcoming statutory review hearing. Then, at the combined statutory review hearing the court expressly found that reasonable services, including visitation, had been provided to Patricia following our remand.

Patricia argues that a "single visit" during the period between issuance of our remittitur and the statutory review hearing cannot, "as a matter of law," be considered reasonable services, ignoring the nearly 24 months of services and visitation

she was previously afforded.  Viewed in isolation, we might agree. However, considering the record as a whole, including the services Patricia had already received, the marked improvement Samuel had made after Patricia's parental rights were terminated and visitation had ceased, and the court's effort to balance Patricia's entitlement to renewed visitation during the limited period between our remand and the statutory review hearing with concerns of Samuel's well-being, we have no difficulty finding substantial evidence supports the court's reasonable services finding and order terminating reunification services.

    4. *The Court Did Not Err in Refusing To Extend the Reunification Period*

Relying on section 352[9] and cases holding that the juvenile court has discretion in an extraordinary circumstance to continue the 18-month review hearing and extend reunification services beyond the statutory limit (see, e.g., *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787, 1796 [mother was hospitalized during most of the reunification period; and, after her release, the child welfare agency attempted to restrict visitation]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777-1778 [child welfare agency never developed a reunification plan for father]), Patricia contends the guardian ad litem order, in effect for more than a year, presented the type of extraordinary external circumstance that inhibited

---

[9]    Section 352, subdivision (a)(1), provides in part, "[T]he court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest of the minor."

her ability to reunify with Samuel and justified extending the reunification period.

Although the guardian ad litem order may have silenced Patricia during hearings and prevented her from communicating directly with her counsel, Patricia has provided no evidence, and the record does not suggest, the guardian ad litem order had any effect on the extended period of reunification services provided to Patricia. Moreover, the juvenile court expressly acknowledged its discretion under section 352 to continue the statutory review hearing in an appropriate circumstance and found no basis to exercise it. In fact, it explained, exercising that discretion would have been contrary to Samuel's interests. That finding was well within the court's discretion.

5. *The Court's Finding That Visitation Following Termination of Reunification Services Would Be Detrimental to Samuel Was Supported by Substantial Evidence*

A parent is entitled to visitation even after reunification services are terminated unless the court finds visitation would be detrimental to the child. (§§ 366.21, subd. (h); 366.22, subd. (a)(3).) In finding continued visitation would be detrimental to Samuel, even in a monitored setting, the court focused on the reports of the foster parents and the social worker, each of whom described a return of Samuel's extreme emotional dysregulation immediately preceding and following the December 22, 2021 visit, including, according to the foster parents, a physical reaction that included a rash covering the better part of his upper body.

Patricia challenges the credibility of this evidence, noting the absence of photographs of the rash, a statement under

28

penalty of perjury by the foster parents or other indicia of reliability, particularly since the foster parents, who wanted to adopt Samuel, had a "vested interest" in thwarting reunification efforts. However, the Department's reports were received without objection, the court properly considered them and found that Samuel, who had previously overcome his post-traumatic stress, had begun again exhibiting concerning physical and emotional responses immediately before and right after the December 2021 visit. To be sure, there was also evidence, which Patricia emphasizes on appeal, as she did at the hearing, that the majority of the holiday visit had gone well and Samuel told Patricia he would miss her when he returned "home." The court considered all the evidence and found the additional trauma caused by further visitation would be detrimental to Samuel. Patricia disagrees with the court's conclusion, but substantial evidence supports the court's detriment finding.[10]

---

[10] Samuel's counsel's October 6, 2022 request for judicial notice of a post-appeal juvenile court minute order dated September 16, 2022 is denied as unnecessary.

## DISPOSITION

Patricia's appeals from the court's December 17, 2021 and January 19, 2022 orders denying her section 388 petitions are dismissed as moot.

Patricia's petition for extraordinary writ relief from the court's order terminating her reunification services, setting a selection and implementation hearing and denying her visitation is denied.


PERLUSS, P. J.


SEGAL, J.


FEUER, J.